IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SUSAN WOLFF DONOHUE, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:20-CV-1111-BJ |
| § | |
| COMMISSIONER, SOCIAL SECURITY § | |
| ADMINISTRATION § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Susan Wolff Donohue ("Donohue") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Because the parties have consented to proceed before a magistrate judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment. For reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**.

I.   STATEMENT OF THE CASE

Donohue filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II, disabled widow's benefits under Title II, and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Donohue protectively filed her applications in September 2018, alleging that her disability began on August 16, 2018. (Transcript ("Tr.") 17; *see* Tr. 236–44.) After her applications were denied initially and on reconsideration, Donohue requested a hearing before an ALJ. (Tr. 17; *see* Tr. 134-35, 148-62.) The ALJ held a hearing on April 22, 2020 and issued a decision on April 30, 2020 denying Donohue's applications for benefits. (Tr. 14-79.) On August 7, 2020 the Appeals Council denied Donohue's request for review, leaving the

ALJ's April 30, 2020 decision as the final decision of the Commissioner in Donohue's case. (Tr. 1–4.) Donohue subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, disabled widow's benefits are governed by Title II, 42 U.S.C. § 402(e) *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance, disabled widow's benefits, and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance and disabled widow's benefits); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.[1] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* §§ 404.1510, 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1;

---

[1] The five-step sequential evaluation rules apply to applications for a period of disability, DIB, disabled widower's benefits, and SSI. *See, e.g., Brown v. Astrue*, No. 4:08-CV-155-A, 2009 WL 1402287, at *1 (N.D. Tex. May 18, 2009).

20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).² Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).³

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence

---

² Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(a)(4)(iv) 416.920(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

³ To be eligible for disabled widow's insurance benefits, a claimant must establish, as relevant here, the following: (1) she is not married; (2) she is between 50 and 60 years old; (3) her spouse died while fully insured; and (4) she has a physical or mental impairment or impairments that, under the regulations, began before the end of the prescribed period and is deemed to be so severe as to preclude her from engaging in any substantial gainful activity. 42 U.S.C. § 402(e); 20 C.F.R. § 404.335. *See, e.g., Pickney v. Shalala*, No. 1:93–CV–325, 1995 WL 137047, at *2–3 (E.D. Tex. Mar.23, 1995). To be eligible for SSI benefits, a claimant must be disabled and must have sufficiently limited income and resources. 42 U.S.C. §§ 1382(a), 1382c.

as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Donohue presents the following issues:

1. Whether the ALJ erred in properly evaluating the medical opinion of her treating neurologist, Alpha Shah, M.D. ("Dr. Shah"), when making the residual functional capacity ("RFC") determination; and

2. Whether there is substantial evidence to support the ALJ's finding that the opinions of consultative examiners Betty Eitel, Ph.D. ("Dr. Eitel"), and Shirley Coats-Kendall, PsyD ("Dr. Coats-Kendall"), were "not persuasive."

(Plaintiff's Brief ("Pl. 's Br.") at 9–18.)[4]

### IV. ALJ DECISION

In her April 30, 2020 decision, the ALJ found that Donohue had not engaged in any substantial gainful activity since August 16, 2018, the alleged onset date of disability, and that Donohue met the disability insured status requirements of the SSA through December 31, 2022. (Tr. 20.) Additionally, the ALJ found that Donohue is the unmarried widow of the deceased

---

[4] The Court notes that Donohue lists one issue in the "Issues Presented" section of her brief. (Pl.'s Br. at 1.) However, in the body of her brief, Donohue discusses the two issues set forth above. (Pl.'s Br. at 9-18.)

4

insured worker, has attained the age of 50, meets the non-disability requirements for disabled widow's benefits, and the prescribed period ended on March 31, 2020. *Id.* At Step Two, the ALJ found that Donohue suffered from the following "severe" impairments: "[s]eizure disorder, major depressive disorder, and generalized anxiety disorder." *Id.* At Step Three, the ALJ found that Donohue did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 23-24.)

> As to Donohue's RFC, the ALJ stated:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following abilities and restrictions: Lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in an 8-hour workday; stand and walk 6 hours in an 8-hour workday; should avoid unprotected heights, dangerous moving machinery, open flames, and large open bodies of water; should not drive as part of the job; and can perform detailed but not complex tasks.

(Tr. 24 (emphasis omitted).)

Based upon this RFC assessment and the testimony of a vocational expert ("VE"), the ALJ concluded that Donohue could perform her past relevant work as a teacher aide (Dictionary of Occupational Titles ("DOT") no. 249.367-074), as generally performed in the national economy. (Tr. 37-38.) Consequently, the ALJ found that Donohue was not disabled. (Tr. 39.)

## V. DISCUSSION

### A. RFC Determination and Dr. Shah's Opinion

As to her first issue, Donohue argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to evaluate Dr. Shah's medical opinion properly. (Pl.'s Br. at 11-15.) Specifically, Donohue argues:

> Starting with treating neurologist Dr. Shah, as Plaintiff's treating neurologist[,] he routinely opined full seizure precautions including that Plaintiff should avoid unprotected heights, fire, water, machines, *any activity that can hurt patient or others.* T 356 (emphasis added), 361, 369, 373, 387, 421. The focus

5

here is Dr. Shah who, due to the seizure precautions, prevented Plaintiff from performing any activity in which she can hurt others. The ALJ never weighed these opinions, and never presented such a limitation to the VE. This is error as the ALJ cannot legally reject an opinion without explanation, and failure to provide such an explanation results in an RFC not based on substantial evidence. *Kneeland*, 850 F.3d at 759-60. ("Given that Dr. Bernauer's opinion is a medical opinion, the ALJ legally erred by rejecting it without explanation, which resulted in an RFC not based on substantial evidence.") Indeed, an ALJ may not forego analyzing an opinion all together. *Kneeland*, 850 F.3d at 761.

      Here, the ALJ never presented that Plaintiff should not be put into a position to harm herself or others to the VE, and never explained why such a limitation was not adopted in the RFC. SSR 96-8p ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.") *cf. Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (If the ALJ's hypothetical does not incorporate the appropriate functional limitations it is not supported by substantial evidence). Regardless of the hypothetical, here, however, the RFC absent any explanation for rejecting Dr. Shah's opinion is significant error. Recall, Plaintiff was found not disabled at Step 4 because the ALJ found, based upon vocational expert testimony, that Plaintiff could perform past work as a teacher's aide (DOT 249.367-064). Commonsense dictates that someone who cannot perform an activity that may put others in harm cannot work in a classroom full of children. Indeed, Teacher Aide, as defined in the DOT (description found in WestLaw DICOT 249.367-074), directly states such a person "[m]aintains order within school and on school ground." Further, it is inevitable that the teacher aide, within a classroom, would be working closely with students and responsible for their supervision in groups or when the teacher leaves the classroom. The ALJ simply never explained why Dr. Shah's opined limitation that the Plaintiff not be in a position to harm others was not adopted into the RFC. As such, the RFC and Step 4 findings are not supported by substantial evidence as Plaintiff's significant seizure history and occurrence would not be appropriate in any capacity for maintaining order in a classroom as required by the Teacher Aide job. Further, there is no evidentiary support from the ALJ about how someone with this restriction could perform the work, and the ALJ never offered any explanation why the opinion directly from Plaintiff's treating neurologist was rejected.

(Pl. 's Br. at 11–12.)

In her brief, Defendant argues that Dr. Shah's opinion regarding full seizure precautions is not a "medical opinion" under the regulations but is, instead, a treatment recommendation or "other medical evidence." (Pl.'s Br. at 4-5.) Thus, Defendant claims that "the ALJ had no obligation to

6

assess Dr. Shah's consultative recommendations under the framework reserved for consideration of 'medical opinions.'" (Defendant's Brief ("Def.'s Br.") at 1; *see* Def.'s Br. at 4-5.)

The ALJ, in formulating Donohue's RFC, analyzed, *inter alia*, Donohue's own statements, a large volume of medical evidence, and the opinions of multiple doctors, including the following: Dr. Shah, Dr. Eitel, Dr. Coats-Kendall, Tim Shephard, M.D. ("Dr. Shephard"), and various state agency medical consultants ("SAMCs").[5] (Tr. 24-37.) The ALJ discussed Dr. Shah's treatment records in depth. (Tr. 28-36.) As to her severe seizure disorder, the ALJ noted multiple instances when Donohue reported having epilepsy and suffering from seizures and multiple instances when she was diagnosed with epilepsy. (*Id.*)

RFC is what an individual can still do despite their limitations.[6] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[7] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's

---

[5] As noted by the ALJ, the SAMCs found that Donohue "needed to follow seizure precautions including avoiding even moderate exposure to hazards such as open moving machinery, open flames, and unprotected heights." (Tr. 31; *see* Tr. 89, 102, 119, 129.)

[6] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[7] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 404.1520c, which apply to claims that were filed after March 27, 2017, such as the claims in the present case. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R.

404.1520c(a)); *Governor v. Comm'r of Soc. Sec.*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *6 (M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." "When a medical source provides one or more medical opinions[8] or prior administrative medical findings,[9] [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of" section 404.1520c(a), as appropriate." 20 C.F.R. § 404.1520c(a) (footnotes added). The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical findings from one medical source individually. 20 C.F.R. § 404.1520c(b)(1).

"The most important factors [the ALJ] consider[s] when [ ]evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." 20 C.F.R. § 404.1520c(a) (footnotes added). "The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he

---

[8] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. § 404.1513(a)(2).

[9] Prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. *See* 20 C.F.R. § 404.1413(a)(5).

may, but is not required to, explain how he considered the (c)(3) [through] (c)(5) factors, *i.e.*, relationship with the claimant, specialization, and 'other factors.'" *Governor*, 2021 WL 1151580, at *7.

In this case, the ALJ found, as stated above, that Donohue had the physical RFC to perform light work with the following abilities and restrictions: (1) she can lift and carry 20 pounds occasionally and 10 pounds frequently; (2) she can sit 6 hours in an 8-hour workday; (3) she can stand and walk 6 hours in an 8-hour workday; (4) she should avoid unprotected heights, dangerous moving machinery, open flames, and large open bodies of water; (5) she should not drive as part of the job; and (6) she can perform detailed but not complex tasks. (Tr. 24.) Donohue, as set forth above, argues that the ALJ failed to properly evaluate Dr. Shah's medical opinion in formulating his RFC determination. Specifically, Donohue argues that the ALJ failed, as required by the new regulations, to articulate how she considered the supportability and consistency of Dr. Shah's opinion regarding the full seizure precautions that Donohue should "avoid unprotected heights, fire, water, machines, *any activity that can hurt patient or others*." (Pl. 's Br. at 11) (*See also* Tr. 356, 361, 369, 373, 387, 421). While Defendant argues that the ALJ was not required to specifically evaluate Dr. Shah's statements regarding the full seizure precautions because such precautions are not considered a medical opinion, for purposes of this recommendation, the Court will assume, without deciding, that Dr. Shah's seizure precautions were a "medical opinion," and, thus, were required to be evaluated by the ALJ.

After reviewing the ALJ's decision, the Court agrees with Donohue that, while the ALJ thoroughly reviewed Dr. Shah's treatment notes, including pages that contain the seizure precautions at issue, the ALJ never specifically mentioned Shah's statements regarding the seizure precautions. (*See* Tr. 28-36.) However, "[p]rocedural perfection in administrative proceedings is

not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). A court will vacate the ALJ's decision only if the plaintiff's rights are substantially affected because the harmless error doctrine applies to social security cases. *Jones v. Saul*, 834 F. App'x 839, 840 (5th Cir. 2020) (citing *Shineski v. Sanders*, 556 U.S. 396, 407-08 (2009)).

In this case, the Court finds that "even if the ALJ made an error, the error would be harmless" because the ALJ included the seizure precautions in the RFC determination and the hypotheticals given to the VE and specifically addressed whether Donohue can work with children. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988) (applying harmless error analysis in disability benefits context)). (*See* Tr. 24-36, 69-70.) In his RFC determination and the hypotheticals to the VE, the ALJ specifically stated that Donohue should "avoid unprotected heights, dangerous moving machinery, open flames, large open bodies of water, and should not drive as part of the job." (Tr. 24, 69-70.) While the RFC does not explicitly include Dr. Shah's language prohibiting "any activity that can hurt patient or others," the language used in the RFC has been held to be sufficient in cases requiring the claimant to take seizure precautions. *See generally Petticrew v. Colvin*, No. 4:13-CV-2119, 2014 WL 2880019, at * (S.D. Tex. June 23, 2014);[10] *Carnley v. Colvin*, No. 3:12-CV-3535-N (BF), 2013 WL 5300674, at *8 (N.D. Tex. Sept. 20, 2013).[11]

---

[10] In *Petticrew,* in response to a physician's opinion that the claimant should take seizure precautions, the ALJ listed in the RFC that the claimant should "'avoid[] unprotected heights or climbing ladders, ropes, and scaffolds . . . [and] moving or dangerous equipment and open flames . . . [and] commercial driving.'" *Id.* at *9.

[11] In *Carnley*, the ALJ's decision was affirmed even though the ALJ failed to include seizure precautions in the claimant's RFC. The court found that the error was harmless because the ALJ included the precautions in a hypothetical to the VE. *Carnley*, 2013 WL 5300674, at *8-9. When discussing the seizure precautions with the VE, the VE stated, "when you talk about seizure precautions from a vocational standpoint you want to avoid working around open flames, moving machinery, uneven surfaces, heights or, you know, dangerous work environments.'" *Id.* at *8.

Furthermore, the ALJ found that requiring Donohue to do no activity that can hurt herself or others to the extent suggested by Donohue, as well as Dr. Shah, was not supported by the record. (Tr. at 27.) Specifically, the ALJ states:

> The evidence supports Ms. Donohue's statements that she had had epilepsy/seizure disorder, depression, and anxiety. However, the evidence does not support Ms. Donohue's statements regarding the severity and extent of her pain, other symptoms, and physical limitations; regarding the severity and extent of her mental symptoms and limitations; . . . that she cannot be trusted to help clients with disabilities or small children . . . .
>
> . . . .
>
> [T]he evidence does not support Ms. Donohue's statements . . . that she cannot be trusted to help clients with disabilities or small children . . . . Because Ms. Donohue's statements about the intensity, persistence, and limiting effects of these symptoms, impairments, and alleged limitations were inconsistent with the objective medical evidence and the other evidence of the record, they are less likely to reduce her capacity to perform work-related activities.

(Tr. 26-27.)

Based on the foregoing, the Court finds that, while the ALJ may have erred in properly weighing Dr. Shah's medical opinions, any such error was harmless. Because the ALJ included the seizure precautions in the RFC and the hypotheticals to the VE and specifically discussed the reasons Donohue would not be precluded from working with children, remand is not required.

### B. Opinions of the Consultative Examiners

In her brief, Donohue also argues that the ALJ erred in finding that the opinions of Dr. Eitel and Dr. Coats-Kendall (collectively referred to as the "Consultant Examiners") were unpersuasive.[12] Specifically, Donohue states:

---

[12] Drs. Eitel and Coats-Kendall both jointly signed a Psychological Evaluation dated February 22, 2019. (Tr. 380-83.) In the Psychological Evaluation, they stated that Donohue's prognosis was "guarded." (Tr. 383.) They further opined:

> Mrs. Donohue can understand, carry out, and remember instructions for one-two steps. She cannot sustain concentration and persist in work-related activity at a reasonable pace. She cannot

> [The Consultative Examiners joint opinion] is obviously disabling as it precluded work at a reasonable pace and limits all interaction, limitations not placed in the ALJ's RFC. The ALJ found this opinion "not persuasive" finding it inconsistent with their own examination findings, the findings of record, and Plaintiff's self-report of functioning. The ALJ's RFC limits Plaintiff only to "detailed but not complex tasks." However, the ALJ's reasoning here is also unsupported by substantial evidence . . . .

(Pl.'s Br. at 15.)

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. §§ 404.1546(c), 416.946(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). At issue here is the ALJ's treatment of the medical opinion of the Consultant Examiners. In this case, there are several medical opinions in the record that assess the effects of Donohue's functional impairments on her ability to work. The ALJ, in making her RFC determination, dedicated multiple pages to considering and analyzing the medical and other evidence in the record.

Moreover, pursuant to the revised rules in 20 C.F.R. § 404.1520c for analyzing medical opinions set forth above, the ALJ properly considered the opinion of the Consultative Examiners. As to factors (c)(1) and (c)(2), which look at supportability and consistency, the ALJ noted that the Consultant Examiners' RFC assessment was not supported by the examination findings at the consultative psychological evaluation, they were inconsistent with the examination findings in the treatment record, and they were inconsistent with Ms. Donohue's states of her functioning. (Tr. 33-35.) As to factor (c)(3), which evaluates the relationship between the medical source and the claimant, the ALJ noted that Dr. Eitel and Dr. Coats-Kendall were the physicians who conducted

---

maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or deal with normal pressures in a competitive work setting.

(Tr. 383.)

Donohue's consultative psychological evaluation. (Tr. 33.) As to factors (c)(4) and (c)(5), which looks at the specialization of the medical source and "other factors" such as familiarity with the other evidence, the ALJ also noted that Dr. Eitel is a Ph.D. and Dr. Coats-Kendall is a Psy.D., and analyzed evidence from multiple other medical sources. (Tr. 33.)

Based on the foregoing, the Court finds that the ALJ properly considered the evidence as a whole, utilizing not only parts of the opinions in the record, but also the other medical evidence in the record, including the Consultant Examiners' opinions, to determine Donohue's RFC. The ALJ discussed the evidence in the record in making her RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised her responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into her RFC assessment that were most supported by the record. *See, e.g., Muse,* 925 F.2d at 790. The "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021). Because there is substantial evidence in the record that supports the ALJ's RFC determination and the ALJ properly considered the Consultant Examiners' opinions, remand is not required.

## CONCLUSION

The ALJ's decision is **AFFIRMED** in all respects.

SIGNED December 9, 2021.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE